Thank you. Good morning. Matthew Edling on behalf of the counties of San Mateo, County of Marin, and the City of Imperial Beach. I'd like to reserve five minutes for rebuttal. I'm going to focus my argument this morning on two issues. The first, that a representative public nuisance cause of action brought in the people is not a claim, as within the meaning of 11 U.S.C. section 101, sub 5, because there is no right to payment to the plaintiff. What is the, what's the standard of review for this argument? De novo, your honor. It's an issue, pure issue of law. You've got a bankruptcy court order here, right? Reorganization plan. Yes, your honor. There is an issue, but we review those for abuses of discretion, right? Interpretation. I'm sorry, your honor. Interpretation, isn't that correct? Not as to this issue, your honor. Okay, but generally speaking. Generally, there is deference to the bankruptcy court. But the order actually uses the word claim, doesn't it? The order does use the word claim in determining that this particular cause of action in the bankruptcy court's decision was a claim. In point of fact, it does conclude that the other causes of respect to whether it really is a claim as a legal matter under the Bankruptcy Act, that we review that de novo. Is that correct? Yes, your honor. And specifically as to this first cause of action, where the bankruptcy court determined. That's what I'm talking about. Yes. That particular, your particular argument here. Yes, your honor. Okay, I think that's probably right, but it's kind of an interesting difficulty. Yes, I would, I would bet that both me and my colleague over here did wrestle with that a little bit in preparing this morning. I'm sorry, I didn't hear that last part. I would agree with you that it is an interesting issue. But it may be interesting, but to you is obvious. I wonder, could you raise the podium a little? I don't, I don't hear too well. And there we go. Yeah, thank you. We were debating whether we were the same height when we were setting the podium. Yeah, that's why we spent a lot of money to have that adjustable. Thank you. Is this better? Yes, thank you. Okay. Under 11 U.S.C. section 101 sub 5, the threshold issue is whether the right to payment is to the plaintiff. Apex oil, like PEC here, was ordered to bear the cost of abatement. And Judge Posner in the Seventh Circuit determined that that was not a right to payment, because the equitable decree is not converted into a dischargeable claim simply by cost to the debtor. The second issue I'd like to focus on this morning is that these actions in total were brought pursuant to my client's governmental unit's police power, and therefore should have been excluded from discharge under the plans plan language. Beginning with the representative public nuisance claim, the first cause of action in each of the complaints at issue is based on a hundred and fifty years statutory authority. But you also brought a non-representative claim, right? Correct. The second cause of action is brought in the name of the governmental units themselves for public nuisance. And doesn't that carry the right to recover money? The second cause of action does permit damages. So what, is there a case or something that says we can bifurcate the two? Yes. The Torrico case, I believe it's footnote six, makes this point exactly. Which is to say that if facts can give rise to different claims, we're evaluating the cause of action that's before you, independent of any other cause of action. Isn't there another case that goes the other way, though? I'm not aware of another case. I know that there was, in the respondent's brief, there was an argument as to how the Seventh Circuit was interpreting 11 U.S.C. sub 1015. But I didn't believe it was as to this issue. I believe there is no authority that stands for the proposition that simply because one cause of action provides for an equitable decree where there is no alternative right to payment, simply because you could give, could bring another cause of action that would, that that somehow truncates or trumps that first cause of action. This happens frequently when entities bring both cases that are in both parties' briefs make clear, it is possible that an entity could bring a circle of 106 sub A action, which would permit for, but for the bankruptcy discharge, the recovery of response costs. That, I would agree, is a right to payment and dischargeable. But a RICRA claim, on the other hand, would not because there is no statutory right to payment. Two things, please. Let's see, what's the relevant operative language here? The breach of which it gives rise to a right to money payment, something like that, isn't that it? That's correct, Your Honor. So whatever your remedy might be seeking, this may, this is still a right that could give rise to a money payment, right? The threshold issue is the definition. In the abstract, so even though you're picking carefully and for good reason, the particular statutes you want to bring the action under, it's nevertheless a breach of a duty that could give rise to a right to money payment, isn't that right? That is the threshold question that the bankruptcy court got wrong. What Apex Oil makes clear is that the right to payment is to the plaintiff, not a right, not a cost that would otherwise be borne by the debtor. Sort of a quintessential example is, if the debtor is ordered to clean up its mess, it will cost that debtor money. You know, it's a fiction that equitable decrees have no cost associated with them. And what Apex Oil makes clear is that it is the right to payment to the plaintiff. Well, it doesn't say that, does it? That's a right to payment. Correct. It does not say that, but all of the... So that's kind of a sticking point. Yes. I mean, I think it's a difficult issue, but it doesn't say to whom, it just says a right to payment. That's true. And you know, the Supreme Court has kind of encouraged us to take a broad view of the notion of claim. So the Supreme Court's decision in COVAX, which is the threshold decision that that are before this panel and in all the papers that all of these cases have been interpreting, you are correct. Does not say right to payment to the plaintiff. But what the body of law interpreting that case has held is that is the key distinctive issue. It collected, for example, it looked at Chatterjee, Tarrico, and a body of cases interpreting that that the message and the concept behind right to payment is, in fact, that it would go to the plaintiff. That's certainly the usual case. Yes, Your Honor. And here, under California law, these governmental units, one, have no ability to demand that money be paid by treasuries in its budget. At most, a court sitting in equity could order PEC to, for example, build the seawall itself. Or it could order PEC to pay into an abatement fund that would be absolutely cabined for that abatement. And any monies not spent to cover the cost of that abatement would be returned to the to whose benefit does a payment redound? Well, undoubtedly, it would redound to the people in this case because the... So why isn't that a money that paid to the people? Well, that would be true in any equitable decree. So, for example, in a RCRA cause of action, which is the issue in both Apex Oil, Tarrico, and AM International, the courts were absolutely clear that an equitable decree requiring a debtor to either stop or prevent the pollution that it allegedly had caused was not a right to payment, despite the fact that, as a matter of pure logic, it would cost the debtor money because it's doing something, whether that's be labor costs or contractor costs. And it would redound to the benefit of the plaintiff, right? In all of those cases. Yeah, so... And those were held not... To the plaintiff. So in every instance where there is an equitable decree requiring a debtor to do something, it does redound to the benefit of the plaintiff. But in the cases that I've just identified, especially where there is a RCRA cause of action, those have been held not to be right to payment. And I'm focusing on RCRA for a variety of reasons, but one is a threshold one, which is that the public nuisance cause of action in the name of the people that my clients have brought is very similar to a RCRA cause of action in the sense that there is no right to demand a monetary payment, on the one hand. You cannot recover response costs under this statute. You cannot do the work and then, at the time of trial, demand payment for the work that you've done to remediate that nuisance. You can force, in this case PEC, to do the work itself. What the cases... What the cases seem to hold on this particular issue is that there is a variety of factors that have led circuit courts sitting and evaluating whether or not there is an alternative right to payment as to whether it is a claim or not a claim. So is the government entity seeking an order to ameliorate an ongoing hazard? If it is, that is more likely not a to contribute to an abatement fund to prospectively fund remediation. And the Court of Appeal in California that has evaluated this after a trial judgment did affirm that, in that case, ConAgra, the defendant, was continuing to... the lead paint that was continuing to harm children in that case could be prevented only by removing the hazard. So Torwicka would say, applying those facts, just as we've alleged here, that would not be a claim because the government entity is seeking an order to ameliorate an ongoing hazard. Second, can the government demand money to be paid to the government unit in lieu of the continued pollution? That was the issue in Torwicko, in Inri Chatterjee, and Apex Oil. No. Like Apex Oil, my client... my clients cannot do the work and seek reimbursement, nor can they recover any costs that they've already spent or will spend in remediating this public hazard. Can the government sue for response costs? No. Under California law, they cannot sue for response costs or reimbursement costs. Is the defendant prevented from doing the work, as was the issue in Kovacs? No. A court in equity could order PEC to do the work. Next, does the money go to the plaintiff? No. It is designated and restricted for abatement only. At most, the fund would be administered by a third party and unspent money back to the defendant. The expenditure of money to satisfy an equitable decree does not equal a claim. That's the holding of Torwicko and Apex Oil, 3rd and 7th Circuit, respectfully. So should the plaintiffs prevail at trial, right, because all of this is just based on a complaint at this point, a court could compel PEC to do the work. Undeniably, that would be an equitable claim, forcing it to clean up its mess or pay into an abatement fund that would be administered by a third party. Now in Apex Oil, Apex estimated that the cost to it to remediate that particular pollution would have been a hundred and fifty million dollars. And Judge Posner said whether it's a lot or it's a little is irrelevant to the interpretation as to whether the right to payment has been satisfied because any cost to prevent pollution in that case, rising sea levels and this, will have a cost to the debtor. But the issue is whether that payment actually reaches, in this case, the government's treasuries, which it cannot. Turning briefly to police power, if I may. There are two exculpatory clauses that are at issue here. They've been characterized appropriately. The first is the environmental law and the second as the police or regulatory law. And that's found at section 5E6, little a, little I, big A, and big B, respectively. I'm going to focus on the latter. As to the latter, the lower courts erred in three ways. The first was the determination that the complaints were brought for a pecuniary purpose. The second is that both courts ignored the allegations of ongoing And third, holding that these exculpatory clauses applied only to post-reorganization claims. Turning to this first error. The bankruptcy court held that it was the clear purpose of the causes of action brought by my client to obtain a pecuniary advantage. This is both legally and factually incorrect. California has long recognized, for example, that a government may, in the exercise of its police power, act to proscribe a nuisance. That is the San Remo Hotel case. 27 Cal 4, 643. And in fact, that's exactly what these governmental entities have done. The first cause of action, as we've just discussed, is an equitable claim brought in the name of the people. That can only be brought by the sovereign and may only recover inequity. Further, even where monetary damages are available, and they are sought by the other causes of action, when the protection of the public is at issue, which it is here, the police power exception applies. That's the relate to, among other things, relief sought for the effects of climate change. Specifically, sea level rise and the inundation and erosion and the costs that are affecting these communities. Those... Did the complaint plead ongoing which is paragraph 75 of the complaint. Joint appendix 9256, paragraph 22. Joint appendix 9310, paragraph 150. In general, what those allegations are, are challenges both to the prior and ongoing contributions of PEC and the co-defendants. That would include not just their production, but also the products that they knew, certainly prior to the effective date, but also post the effective date, would cause the very environmental harms that my clients are now suffering. And that is the basis of all of the causes of action. But as to the first cause of action, that is brought in the name of the people. And it may only recover inequity, as distinct from the other causes of action. Did the bankruptcy court say that section B required that PEC have ongoing mining operations? The bankruptcy court did look to a jurisdictional allegation when it defined the parties and truncated its analysis as to what the allegations were to a single paragraph that attached PEC's conduct to California, which was an issue for personal jurisdiction within the state courts. But I believe perhaps the question is, does this exception also require that the claims arise out of mining operations of the debtor? I thought that's what the district court found. So is that correct? So the district court, well the bankruptcy court and the district court did, and I apologize your honor, I did misunderstand your question. Now I do. The district court did find that the exculpatory clause only applied to post-reorganization conduct. And that is incorrect. It is incorrect. No, no. I thought it also said it required that there be mining operations in California. So the district court did hold, well. It says that. The clause says that. No, the clause does not say that there has to be ongoing mining operations in California. It doesn't say the claims have to arise out of the mining operations? Yes. Okay. Yes, I'm distinguishing that from the there were two errors that I think are implicit in that question that the bankruptcy court and the district court made. The first is that it confined its analysis as to my client's claims as to conduct mining operations in California, which are alleged, but are alleged to attach to the jurisdictional issue. The second is this issue as to whether or not the exculpatory clause only applies to post-reorganization conduct arising out of the mining operations. That is incorrect for three reasons. The first is it contradicts the actual text of the plan injunction itself and the plan itself, and it renders those clauses meaningless. So the plan injunction expressly bars, quote, only claims that arose on or before the effective date. On or before the effective date. And that makes sense. Because as this circuit court is held in Fairfield communities, the plan has nothing to do whatsoever with claims arising after the confirmation date. Here, the carve-outs describe exemptions from that very injunction. And in relevant part, this very exception states that all of the debtors, or reorganized debtors, claims, defenses, or causes of action related thereto are likewise preserved. Focusing on both debtors and reorganized debtors. That is the language of the statute. Why would this particular, pardon me, that is the language of this clause, why would this clause include debtor if it were only to relate to post-reorganization conduct? Because the debtor no longer exists after reorganization. Now the stated argument is that that is simply comfort language intended to provide the parties this comfort. Now, if that is the case, they certainly could have included that in those clauses. But they did not. Thank you. Good morning, Mr. Dvoretsky. Good morning, your honors. May it please the court, Shide Dvoretsky on behalf of Peabody Energy. This appeal involves two sets of issues. First, are the plaintiff's causes of actions claims under the bankruptcy code? It's undisputed that seven of the eight are, and the representative public nuisance cause of action is too, because abatement funding is an available remedy under California law. Second, were any of the plaintiff's claims accepted from discharge by the settlement provisions in the bankruptcy plan? They were not, for reasons explained by the which it presided, is entitled to deference. Let me circle back and explain each of these points in more detail. First, all of appellant's causes of actions are claims. The plaintiffs failed to participate in Peabody's bankruptcy to assert their claims, and the claims were therefore discharged when the bankruptcy court confirmed the plan. As to the representative public nuisance cause of action, it's a claim because abatement funding is an available remedy, and they say they seek equitable abatement, which they agree includes a possible abatement fund. So do you agree with the, with the other side that we need to bifurcate these two, the representative and the non-representative, or should we consider them as one, the public nuisance law? So I think that there are two different, two reasons why the representative public nuisance claims are claims under the bankruptcy court. One is the availability of abatement funding. The other is the point that Your Honor is suggesting, and that the district court concluded, which is- I just didn't hear you making that argument, so I was wondering if you were abandoning that. No, we're not abandoning it. We're, we're making both arguments. And the argument that you're suggesting, which I agree with, is that under the bankruptcy code's definition of a claim, 1015B, it's a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. And here, the breach at issue for both the representative and non-representative public nuisance claims is the same breach. And under the non-representative public nuisance claim, that gives right to, that gives rise to a right to payment, to the damages claim. Suppose the state of California repealed that statute. Would that, would they then have a good claim? That might affect- Well, I don't think it's odd because I think whether you have a claim and whether you have a right to, to this kind of a remedy inherently turns on state law. So it does depend on how California has structured its law. If you were to posit a different type of California statute that didn't have the damages remedy available for the non-representative claim, this particular reason for it not being a claim, or for it being a claim, would fall away. But then we would still have the argument about the availability of the abatement fund. And, and it's that availability, just the availability of the fund- How does the abatement work exactly, abatement payments? How does, how does that work in terms of the equitable decree? It's a practical matter. So under the California cases that we cite, the ConAgra case and the County of Santa Clara case, the trial court has the option to either order the defendant to perform the cleanup or to put money into the abatement fund. This is similar to what the Supreme Court confronted in the Kovacs case, where what was at issue was money that had been put into a fund administered by a receiver. That didn't make it any less of a claim, the fact that the receiver had the funds there as opposed to the state having it directly. Either way, it's a right to payment because the defendant has to pay the money. And as the court's questioning was suggesting earlier, the money benefits the people, whether the people directly hold it or whether it is being held and expended by a receiver to perform the cleanup that is allegedly for the benefit of the people. Could the state request a remedy in such a way as to eschew any right to abatement payments and simply ask for an injunction, mandatory injunction, demanding the cleanup be made and that way avoid this being a claim? I don't think that... Do you see what I mean? Sort of fashion the remedy in a way that would avoid this particular argument? So first, I don't think they could under California law because California Supreme Court cases say that public nuisance may be ordered, and this is, I think, in the trial court's discretion, either by paying into a fund dedicated to the abatement purpose or by undertaking the abatement themselves by the defendant. That's County of Santa Clara 235 P3rd 21 at 34. But in any event, in this case, they haven't disclaimed an abatement fund. I was wondering what exact, what remedy they were seeking. So if you look at the complaint, it's seeking primarily damages. They do seek equitable abatement. One of the principal arguments throughout this argument in our brief was that the availability of the abatement fund is key to the analysis. In their reply brief, they don't disclaim that they're seeking an abatement fund. It would have been easy enough to do that in this court if that had made a difference. But to the contrary, they're saying that they are seeking equitable abatement, which they acknowledge at page 8 of their reply includes an abatement fund. And so the availability of that fund makes this a claim under 1015. With respect to some of the cases that my colleague was discussing earlier, in the Chatterjee case in the Second Circuit, that one establishes the rule in our favor. In that case, there was a claim because the creditor obtaining the order had the option to pursue monetary relief, just as in this case. That's 944F2nd at 1008. In the Torrico case, a couple of distinctions with that case. First, the court, the Third Circuit said, quote, unlike in Kovacs, the state neither seeks monetary relief nor has a right to payment. Again, different from the situation here. And second of all, in Torrico, there you had a seepage pit that continued to leak after the bankruptcy. That was a claim that ran with the land and that the defendant, post-bankruptcy, still had an obligation to clean up. Here, this claim, as the bankruptcy court correctly found, the complaints are overwhelmingly focused on conduct between 1965 and 2015. The only allegation at all with respect to post-2015 conduct is a conclusory unsupported allegation, not supported by any factual allegations, that Peabody continued to export coal out of California post-bankruptcy. In a complaint that is overwhelmingly focused on conduct over the 50 years from 1965 to 2015, with some detail about various defendants, although very little about Peabody, it's not sufficient to have just a conclusory allegation about post-2015 conduct. Especially when you consider that the plaintiffs could have brought their claims in the course of the bankruptcy. They had notice of Peabody's bankruptcy. They could have stood in line with all the other creditors and brought their claims. Instead, three and a half months after the confirmation of the plan, they brought this complaint. Within that three and a half months, that's not when global warming happens. The complaint is challenging pre-bankruptcy conduct. And so that's distinguishable from the Torrico case, where you had a claim running with the land having to do with ongoing pollution. With respect to the Apex case out of the Seventh Circuit, that was, as my colleague acknowledged, a RCRA claim. RCRA, as the court said in Apex, quote, does not authorize any form of monetary relief. That's 579F3rd at 735 to 736. And so again, there too, the key difference is there was no monetary relief available, whereas here under California law, there is. That's one reason why this is a claim. The other is the one that Judge Grunder was suggesting, that you can't separate out the consideration of the representative from the non-representative cause of action. If we buy that argument, are we going to create a circuit split with the Seventh Circuit? You're not going to create a circuit split with the Seventh Circuit. I think this is referring to a different case out of the Seventh Circuit that the plaintiffs rely on. I think it's the Udell case. That's what I'm thinking. But I think the difference is that in that case, the liquidated damages were not a substitute for the injunction. Whereas here, you can either get an abatement fund, whereas here the two are substitutes for one another. You can't get both for the same conduct. And I think that's the distinction with the Udell case out of the Seventh Circuit. With respect to the second issue in the case, whether any exception to discharge applies, none does. Appellants point to the EPA settlement provisions, but neither one of those applies based both on their explicit timing language, having to do with post-discharge claims, as well as their claim-specific language, the substantive types of claims that are at issue. These provisions, as the bankruptcy court found, just ensured that the ongoing entity, the reorganized Peabody, had to comply with environmental laws that regulated on an ongoing basis and that run with any land that Peabody owned, leased, and so forth. First, before we even parse the substantive types of claims that are at issue, if you look at the plain text of the provisions, they don't apply to claims that arise like or confirmation of the plan. The language of those provisions is reproduced on pages 44 to 45 of the red brief. Section A applies only to claims against the reorganized debtor and to which the reorganized debtor is subject as the owner, lessee, operator, et cetera, of real property or a mining operation after the effective date of the plan. Similarly, Section B only applies to a claim that arises, present tense, from the mining operation of any reorganized debtor. These provisions only apply to claims after the effect of the date of the plan, but appellants have not alleged any such claims. Now their counterargument to that is that the EPA settlement provisions are superfluous because the court doesn't discharge post-effective date claims anyway. But first, that is the plain meaning of these provisions. And second, the bankruptcy court found as a factual matter, and its reading of the plan again is entitled to deference, found as a factual matter that these provisions were put in as clarifying language. At Merit's Appendix 33, they're clarifying language, they're added to provide assurances that post-effective date the parties could still enforce environmental laws and regulations relating to ongoing mining operations, that the ongoing mining operations, if any, of the reorganized debtors are not what's at issue in the complaint. At Appendix 40, these provisions are talking about, quote, an entity's present relationship to the land. And that goes on to cite circle cases and further explaining that it's not enough for the allegations merely to relate to coal because the necessary connection to post-effective date relationship to land is absent. The focus of the negotiations leading to these settlement agreements, the bankruptcy court found, was to ensure that the reorganized debtors honored their obligations concerning the land post-emergence. Again, that's a quote from 45. And lastly, the bankruptcy court, which presides over lots of bankruptcy plans like this, found that it was, quote, not uncommon for parties to include comfort language, to encourage Lastly, while the court could stop there because these claims don't involve, the complaints don't involve post-effective date conduct, in any event, the exceptions don't apply on their own terms. The bankruptcy court didn't abuse its discretion in concluding that the claims don't arise under environmental law. It looked to the list of illustrative federal statutes and determined that California's public nuisance statute, which is not principally focused on environmental harm, doesn't fall within them. Nor did it abuse its discretion under Section B in finding that appellant's claims are not exercises of the police or regulatory law, given the pecuniary purpose of the claims that were brought here and the way in which appellants brought them, essentially, to cut in line ahead of other creditors. The court has no further questions. Very well. Thank you, Mr. Dvoretsky. Thank you, Your Honor. Mr. Edling, you used all your time. When the yellow light comes on... I just glanced right past that. But it is, it's a difficult case. We'll give you two minutes. Thank you. I'd like to start with Judge Arnold's question as to whether California law would permit an injunction as opposed to an abatement fund or something else under the public nuisance in the name of the people. It does. That is one of the holdings of county in Santa Clara. There's no doubt it could permit it. My question was, could you limit your relief request in a way that would avoid the difficulty with respect to the possibility of a contribution to an abatement fund? That was my question. Understood. While it could be limited, I do agree with PEC that the cause of action and the case law interpreting it does provide for an abatement fund, so that would be an alternative remedy. So the issue is specifically whether that would, in fact, inure to the plaintiff in an abatement fund. And here, two points that my colleague made that I take issue with. The first is Torrico, that it runs with the land. That's true. But the seepage pitted issue there, that occurred prior to the effective date. So the conduct that gave rise to the cause of action in that case, incepted prior to the effective date and continued past the effective date. Now, moving to the Henry Udell question that Your Honor had, that can you get relief for the same conduct? Here, the way it would apply is the following. Should these cases try, and the causes of action two through eight would be tried to a jury, the public nuisance cause of action in the name of the people would be tried to a judge in equity. And the only relief that could be afforded in the case and trial in equity is either injunctive relief, ordering PEC to, for example, build a seawall, or put money segregated for that abatement. So that is it. Now, and the Apex Oil wrestled, same circuit, wrestled a little bit with all of these cases. And point of fact, in contrast to my colleague's point, Apex Oil held in analyzing Henry Udell and distinguishing Kovacs, that one, in the Kovacs case, Kovacs had failed to, there we are again. Thank you. Just take my word for it. I bet it's in your brief. Thank you, Your Honor. Counsel, we appreciate your appearance today and argument. It's been helpful. The case is submitted and will be decided in due course.